LC6NTRUC

U.S. District Court
Middle District of Florida
Orlando Division

**GOVERNMENT EXHIBIT**

Exhibit No.:     9

Case No.: 6:23-mj-1548

UNITED STATES OF AMERICA

vs.

NICHOLAS TRUGLIA

Date Identified:_____
Date Admitted:_____

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4               v.                        19 Cr.

 5   NICHOLAS TRUGLIA,

 6               Defendant.                Confer

 7   ------------------------------x

 8                                         New York, N.Y.
                                           December 6, 2021
 9                                         10:35 a.m.

10   Before:

11
                      HON. ALVIN K. HELLERSTEIN,
12
                                           District Judge
13
                            APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  TIMOTHY CAPOZZI
          Assistant United States Attorney
17
     JEFFREY UDELL
18   ADAM COHEN
          Attorneys for Defendant
19
     Also Present:
20
     Joshua Rothman, U.S. Pretrial Services
21

22

23

24

25
```

LC6NTRUC

1          (Case called)

2          MR. CAPOZZI:  Good morning, your Honor.  Timothy

3   Capozzi, for the United States.  With me at counsel table is

4   Pretrial Services Officer Josh Rothman.

5          MR. UDELL:  Good morning, your Honor.  Jeffrey Udell,

6   for Mr. Truglia, who is standing to my right; and further to my

7   right is my co-colleague Adam Cohen.

8          THE COURT:  Good morning, all.

9          Mr. Capozzi, I think it is better to sit.  Everybody

10  sit.  That way I will hear you better.

11         MR. CAPOZZI:  Thank you, Judge.  Yes, your Honor.

12         Your Honor has received, I believe, the violation

13  memorandum from pretrial services.  Your Honor, my

14  understanding is that the defendant does not intend on

15  contesting the fact that he, in fact, violated those conditions

16  in multiple ways on November 5.  Your Honor, those violations

17  include the defendant's use of the internet on the date of the

18  incident, one of his conditions prohibits him from accessing

19  the internet.  Those violations include his possession of an

20  internet-enabled computer that was not known to pretrial

21  services.  He possessed an internet-capable cell phone that was

22  not known to pretrial services.  He was also in possession of

23  cocaine on that same date, and then when he was confronted by

24  pretrial services about what had happened, he was not truthful

25  with his Pretrial Services Officer.  He denied accessing the

LC6NTRUC

1    internet and he denied telling the officers in Florida that he

2    had accessed the internet.

3           Your Honor, taking it a step back, these violations

4    stem from local police responding to the defendant's apartment

5    residence.  They responded because they received a call that

6    there was a robbery in progress.  They planned accordingly and

7    responded with at least ten officers who thought they were

8    going to encounter a robbery in progress.  In fact what they

9    found was the defendant alone at the residence.

10          The tip that there was a robbery in progress had

11   described the defendant and the defendant's clothing as the

12   person who was committing the robbery.  It seems as though what

13   actually happened is that the defendant went on the internet

14   that day, used a camera, someone saw him, saw what he was

15   wearing that day, called police to make a false report of this

16   robbery in progress, and the police responded.

17          So the defendant's internet use --

18          THE COURT:  Let me make sure I understand that.

19          MR. CAPOZZI:  Sure.

20          THE COURT:  He was found at home?

21          MR. CAPOZZI:  Correct.

22          THE COURT:  With a camera?

23          MR. CAPOZZI:  With multiple computers, some of which

24   were enabled with a camera device so you could go online and

25   share your video.

LC6NTRUC

1      THE COURT:  How could someone report him as being a
2  thief if he's at home and he's distant from the scene of the
3  supposed robbery?
4      MR. CAPOZZI:  So, your Honor, what seems to have
5  happened is this is what is sometimes referred to as a swatting
6  incident, where someone will make a false report of a robbery
7  or some such thing, and they will direct law enforcement to
8  report to a location where there is no robbery, and the
9  consequences can be catastrophic because the police think
10  there's some violence underway and in fact there is no such
11  thing.  So what it seems happened is the defendant was online,
12  someone saw what the defendant was wearing, that person called
13  the police, made a false report.
14      THE COURT:  How could someone see what the person was
15  wearing if the defendant was inside a house, and there were no
16  other people there?
17      MR. CAPOZZI:  Because the computer that the defendant
18  was using had a camera so that people who he was communicating
19  with on the internet could see through the video what he was
20  wearing inside his own apartment.
21      THE COURT:  Okay.  I see.
22      MR. CAPOZZI:  Okay.  So that person who could see him
23  because he was using the internet and because he was using a
24  camera to communicate over the internet, could describe what he
25  looked like and what he was wearing to the police, even though

LC6NTRUC

1   that person it seems was never in that apartment.

2          And so the police responded and they didn't find a

3   robbery.  But what they found was the defendant violating his

4   conditions in numerous ways, including multiple computers, a

5   cell phone, cocaine on the coffee table.  And then perhaps the

6   worst of it is that he's dishonest with pretrial about what in

7   fact had happened.  Again --

8          THE COURT:  Say that last sentence again.

9          MR. CAPOZZI:  Sorry, your Honor?

10          THE COURT:  Say that last sentence again.

11          MR. CAPOZZI:  What is perhaps the worst of it is when

12   he is then confronted by pretrial --

13          THE COURT:  He lied.

14          MR. CAPOZZI:  He lied to his pretrial officer.

15          THE COURT:  What did he say?

16          MR. CAPOZZI:  He denied that he had access to the

17   internet.

18          THE COURT:  But it was right in front of him.

19          MR. CAPOZZI:  The pretrial services officer wasn't one

20   of the officers who responded to the scene.  The people who

21   responded to the scene were the local police officers, the

22   local police station.  When the pretrial services officer is

23   speaking to the defendant, it is sometimes after, sometime

24   after.  So the pretrial services officer didn't have the

25   benefit of eyewitness response.

LC6NTRUC

1         THE COURT:  Okay.

2         MR. CAPOZZI:  So, again, I think from my

3  communications with defense counsel I don't think there's going

4  to be -- there may be additional context that he seeks to

5  provide, but fundamentally we have uncontested violations of

6  conditions in numerous respects.

7         THE COURT:  Is the access to the internet the only

8  incident at that time?

9         MR. CAPOZZI:  It is not, your Honor.  As your Honor

10  may recall in March, specifically on March 30 of this year, the

11  parties appeared before your Honor for a telephonic conference,

12  during which the government sought the defendant's remand

13  because of violation of the internet condition on at least two

14  occasions, one in December of last year, so a year ago, and

15  again in March of this year.

16         At that time, your Honor -- and again he appeared

17  telephonically -- your Honor said, permit me to quote you from

18  the transcript, your Honor.  Your Honor said, "Mr. Truglia, by

19  a very slim margin you are not remanded.  That means I am not

20  putting you in jail to await trial.  If you're wise, you'll

21  make sure that there are no other even remote possibilities

22  that you have access to the internet, because next time it is

23  very highly likely that you will be in jail.  The government in

24  my judgment is able to prove by a preponderance of evidence

25  that you used the internet two times at least and that the use

LC6NTRUC

1    of the internet was to convey a threat along the lines that you

2    were indicted on.  If I need to, I can make those findings, and

3    within those findings there will be no condition or set of

4    conditions that would assure an absence of danger to the

5    community.  I am not going to do that, but you should make

6    yourself aware that you escaped jail by the skin of your teeth.

7    Make sure that you comply fully with the conditions which are

8    set."

9         Those were your Honor's words in March of this year.

10   Your Honor, on October 28 of this year, so roughly a week

11   before the incident in question, the defendant appeared before

12   Magistrate Judge Jones, entered a guilty plea to Count One of

13   the indictment, which is a conspiracy to commit wire fraud,

14   which relates to the defendant's use of the computer to

15   accomplish a fraud with a loss of over $20 million and --

16        THE COURT:  Let me get the chronology straight.  First

17   he was found guilty and sentenced and given a condition not to

18   access the internet.

19        MR. CAPOZZI:  Your Honor, he was indicted in this case

20   and charged with wire fraud.  One of the conditions of his

21   release pretrial was the restriction on the internet access.

22        THE COURT:  And twice after that he violated.

23        MR. CAPOZZI:  Twice he violated.

24        THE COURT:  Now this is the third time.

25        MR. CAPOZZI:  Sorry, your Honor.

LC6NTRUC

1        THE COURT:  Now, this is the third time.

2        MR. CAPOZZI:  This is -- well, the first time we were

3   before your Honor included multiple instances of internet use.

4   So you can count it twice or you can count it three.

5        THE COURT:  This is at least the third time.

6        MR. CAPOZZI:  At least the third time, your Honor.

7        THE COURT:  Thank you.

8        Mr. Udell?

9        MR. UDELL:  Thank you, your Honor.

10       Just working back -- and as Mr. Capozzi said, we have

11   spoken, the government and I, several times.  Frankly, since we

12   first made an appearance in this case, which was after the last

13   bail violation hearing, but we have had open communications.

14   He is correct that, as we advised him, we are not here to

15   contest the bail specifications that were brought before your

16   Honor, but I do want to make a few points of context.

17       THE COURT:  You are not contesting that there were

18   such conditions or you're not contesting that conditions were

19   violated?

20       MR. UDELL:  The latter, your Honor.  We are not

21   contesting that the conditions were violated.  I don't believe

22   it is three separate occasions.  That's not material.  There

23   was one bail hearing, and this is the second bail hearing.  But

24   the point is, your Honor --

25       THE COURT:  What is significant to me is that after I

LC6NTRUC

1    warned him he did it again.

2              MR. UDELL:  Your Honor, that is a fair point.  I

3    think, your Honor, that is a fair point.  He is here to today

4    to acknowledge that and acknowledge that these bail violations

5    are well found.

6              But if your Honor will allow me to, I would like to

7    make a few points of context here.  The first one, as you heard

8    from the government where they explained to you what happened,

9    this time is this incident called, or this circumstance called

10   swatting.  What that is, is some other person calls the police

11   falsely saying that there's a robbery going on, intending to

12   cause havoc to Mr. Truglia.

13             So he is a victim of that, you know, act by other

14   people.  He himself was, with respect to the internet aspects

15   of the bail violations, he's not violating the law committing

16   crimes.  He's on the internet in violation of a bail condition

17   by playing video games and the like.

18             The first point I want to make is, one, the reason we

19   are here is because he's the victim of some other nefarious

20   actor falsely calling the police.

21             THE COURT:  He's falsely accused of a crime.

22             MR. UDELL:  Correct.  With the specific purpose, your

23   Honor, of, you know, having the cops come to Mr. Truglia's

24   apartment with guns drawn and all of that.  In other words,

25   he's the victim of that.  He didn't have anything to do with

LC6NTRUC

1    that happening to him.  What he did wrong was --

2           THE COURT:  We don't know the motives.  I can't assume

3    that the motives were bad.  They saw him, someone reported him.

4           MR. UDELL:  Your Honor, it is a fair assumption.  I

5    think even the government would agree that motives of the folks

6    who called the cops were bad, because there was no robbery.  In

7    other words, they falsely said there's a robbery at Truglia's

8    house, and there was no robbery.  Truglia was at home at his

9    house with no one else there.

10          The problem for Mr. Truglia, of course, is that he was

11   on the internet while he was home and he should not have been

12   according to his bail specifications and he's acknowledge that

13   and he's not contesting that, your Honor.

14          THE COURT:  What was it that was said by the person

15   who identified Mr. Truglia?

16          MR. UDELL:  To my understanding, in substance they

17   called 911 and reported something like a robbery or some other

18   such crime is in progress at this address, at Truglia's

19   address.  What they did is they described the perpetrator as

20   something fitting him, you know, white male, his height,

21   wearing a white sweatshirt, hooded sweatshirt.  At that time,

22   Mr. Truglia was wearing a white hooded sweatshirt.  As the

23   government explained, because he was at home alone, you know,

24   playing a video game online, which he should not have been

25   doing, so they --

LC6NTRUC

```
 1          THE COURT:  His visage was seen to this person who
 2   reported him.
 3          MR. UDELL:  I'm sorry?
 4          THE COURT:  Mr. Truglia's visage was identified.
 5          MR. UDELL:  Correct.  So it's clearly a nefarious and
 6   false report.
 7          THE COURT:  I wouldn't call it -- I mean, he was
 8   looking for trouble by using a camera in a place where he
 9   shouldn't have been.
10          MR. UDELL:  Your Honor.
11          THE COURT:  It was as if he appeared remotely for a
12   hearing.
13          MR. UDELL:  Correct.  He appeared remotely, but the
14   thing he should not, as your Honor said, shouldn't have been
15   doing, millions of people do exactly that lawfully every day.
16   And he was also acting lawfully on the computer, but in
17   violation of the specific bail condition.
18          Again, there's no excuse for that, and he acknowledges
19   that here today, your Honor.  But I was just making the first
20   point that, you know, it's not that he was in the -- you know,
21   the police were there at the house not because of any criminal
22   conduct by him, but because some other person tried to
23   victimize him by sending the police to his house falsely.
24          That was point one.
25          THE COURT:  I understand.
```

LC6NTRUC

1          MR. UDELL:  Point two, regarding the internet usage,

2     again, as I said, it is for context.  I want to make crystal

3     clear this is not an excuse, Judge, and it was wrong, and he

4     knows it was wrong because it was a bail condition that he was

5     violating.

6          But, for context, there's no evidence that online --

7     Mr. Capozzi references, oh, he pled guilty to a crime involving

8     wire fraud, which was use of the internet.  There is no

9     evidence or allegation remotely that what he was doing online

10    there had anything whatsoever to do with the charges for which

11    he has pled guilty, you know, the fraud charges.  Rather, as he

12    admitted, he was online playing a game.  So there is no

13    evidence on the contrary there.

14         And, lastly, you know, regarding the cocaine use,

15    Judge, you know, again, there is no excuse.  The officers found

16    and he acknowledged there was cocaine out on the table.  The

17    only point I can make -- and, again, it is not by way of an

18    excuse at all, there's no allegation or inference that there

19    was anything to do with sale or distribution or drug dealing or

20    anything like that, other than that this controlled substance

21    was for personal use.  Obviously, that is unlawful and it's

22    wrong, and, you know, that's clear, and he's not running away

23    from that.

24         So, your Honor, if I may, with regard to the

25    consequences from these bail violations, which, as I said, he's

LC6NTRUC

1    here and prepared to recognize, I want to make a few points.

2          One, when Mr. Capozzi quoted your Honor's statement

3    the last time, I think fairly enough your Honor was concerned

4    with the fact that someone is out on bail and, you know, he's

5    heading for trial at some point down the road, and if he

6    violates you are not going to have, the Court would not have

7    confidence that he would abide by conditions until trial.

8          Well, the circumstances have drastically changed in

9    this case, your Honor, since then, and frankly, since we have

10   come into the case.

11         Mr. Truglia has decided that he's not going to trial.

12   He's going to accept responsibility for the underlying charge

13   set forth in Count One of the indictment, and he pled guilty,

14   as you heard, to that charge.

15         He pled guilty, your Honor, pursuant to a plea

16   agreement with a stipulated guidelines range, which guidelines

17   range calls for a sentence of incarceration.  I think that's

18   important, because what I want to tell you next, your Honor, is

19   that immediately after Mr. Truglia pled guilty we informed the

20   government and the Court and the probation department that we

21   wanted an expedited sentence.  In other words, rather than

22   contest this and go to trial months away, rather than have a

23   sentencing months away, Mr. Truglia wanted to get sentenced as

24   expeditiously as possible.

25         So, in fact, we set up a sentencing date -- your Honor

LC6NTRUC

1    has it now on the calendar --- for January 18 of 2022, in just a

2    few weeks.

3            The point I'm making, your Honor, is that the changed

4    circumstances is that he realizes that at that sentencing there

5    will be a sentence meted out, presumably one of incarceration.

6    It's a spoiler alert, but although we will be arguing for a

7    compassionate sentence for Mr. Truglia at the time of his

8    sentencing, your Honor, and we will ask the Court to consider

9    the factors under the statute, under 3553(a) that we think

10   would make it a compassionate sentence, one that is somewhat

11   below the guidelines range that we've stipulated to with the

12   government, but our sentence requested will not be one of

13   nonincarceration.

14           We fully understand and he understands and expects

15   that will be a custodial sentence meted out.  That is an

16   important factor, your Honor, I would say for the Court's

17   consideration today in terms of how to deal with his bail

18   violation.  He has about five weeks plus until the sentencing

19   date.

20           There are really three reasons why we respectfully

21   request that it would be a wise and beneficial exercise of the

22   Court's mercy here to permit him to stay out on bail.

23           The first is he is under several medications right

24   now, some for a psychiatric condition and some for a cardiac

25   condition that he has.  These are very powerful medications.  I

LC6NTRUC

1   don't want to say too much more on the record here.  Obviously,

2   all of this will be in the confidential pretrial sentence

3   report, but -- presentence report, sorry.

4        But the point is, your Honor, with these medications

5   that he's on and doctor appointments with his physicians that

6   he still has between now and the time of sentencing, should he

7   be remanded to the care of the BOP, locally at the MDC, that

8   could wreak havoc on his health with those very powerful

9   medications both for psychiatric issues and for cardiac issues.

10        That's number one.

11        Number two, in the few weeks left between now and the

12   sentencing, he, of course, will need to meaningfully

13   participate in his defense, meaning preparation for sentencing

14   with his lawyers, which will be severely hampered, you know,

15   should he be remanded to the custody of the BOP in Brooklyn.

16        And, finally, your Honor, and it goes without saying

17   that I think all defendants in this situation that are going to

18   face a period of incarceration, it's known in part for the

19   reasons that I said in point one, meaning the medical

20   condition, but generally speaking that it is favored to report

21   to the place where you're going to be designated.  And he I

22   think certainly is ready to do that and would like to do that

23   rather than be first at the much less desirable, and frankly

24   risky for him and his health situation at the MDC until that

25   time.

LC6NTRUC

1      So that's what we respectfully submit would be a fair

2   and just exercise of the Court's power and mercy here that we

3   respectfully request the Court entertain that application.

4      THE COURT:  I am going to ask a question of two of

5   Mr. Truglia.  If you prefer that he not answer them, say so.

6      Did you think I meant what I said when I told you that

7   you escaped jail by the skin of your teeth?

8      THE DEFENDANT:  I do, your Honor.

9      THE COURT:  Did you have that in mind when you

10  violated that condition?

11     THE DEFENDANT:  I did not, your Honor.  No.

12     THE COURT:  If you thought I meant what I said, why

13  did you proceed indifferent to what I said?

14     THE DEFENDANT:  It was very irresponsible of me, your

15  Honor.

16     THE COURT:  Right.  I said you would go to jail,

17  right?

18     THE DEFENDANT:  Yes, you did, your Honor.

19     THE COURT:  That's what it's going to be.

20     Anything further?

21     MR. UDELL:  No, your Honor.

22     THE COURT:  I remand Mr. Truglia to jail for

23  detention.  I find that there is no condition or set of

24  conditions that will assure the safety of the community from

25  crimes like the crimes that Mr. Truglia was convicted of.

LC6NTRUC

1      He had transgressed in the past by not heeding the

2   condition of not having access to the internet.  He violated

3   before and he violated again.  If I keep him at home, he'll

4   likely do it a third and fourth and fifth time.  So he will be

5   in detention.

6      That's the ruling.

7      Do I need to say anymore, Mr. Capozzi?

8      MR. CAPOZZI:  Your Honor, I believe the sentencing is

9   set for January 18.

10      THE COURT:  Right.

11      MR. CAPOZZI:  We have also submitted to the Court for

12   Court's consideration a copy of plea transcript and a proposed

13   order accepting the plea.  I just raise that to the Court's

14   attention.

15      THE COURT:  When was the plea?  Last week, right?

16      MR. CAPOZZI:  It was at the end of October.  We're

17   happy to resubmit the paperwork to your Honor.

18      THE COURT:  Brigitte, do we have it?

19      THE DEPUTY CLERK:  Just send it to me.

20      THE COURT:  Send it again.

21      MR. CAPOZZI:  Thank you, Judge.

22      THE COURT:  Anything else?

23      MR. CAPOZZI:  No, your Honor.

24      Your Honor, I have a hard copy of that transcript and

25   proposed order if your Honor would be inclined to receive it.

LC6NTRUC

1              THE DEPUTY CLERK:  Just e-mail it to me.

2              MR. CAPOZZI:  Okay.

3              (Adjourned)